**Robert H. MULLINS, Appellant,**

v.

**Ruthie M. MULLINS, Appellee.**

**No. 2–89–005–CV.**

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1990.

Kenneth N. Price, Azle, for appellant.

Stites, Hoover, Clark & Smith, Robert D. Hoover and Ellen S. Smith, Fort Worth, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and MEYERS, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant, Robert H. Mullins, appeals from the trial court's final decree of divorce. He complains of the division of the parties' property. After "finding" appellant was at fault in the divorce, the trial court distinguished separate and community property of each party and divided community assets by item and awarded certain money judgments in favor of appellee, Ruthie M. Mullins. The court awarded appel-

lee a judgment of $23,152.90 as her share of the community estate. In addition, appellee was awarded all community cash assets on deposit ($22,875.57) plus a $10,624.43 judgment ($33,500 total) as reimbursement for her separate property used to improve appellant's separate property.

We affirm the judgment.

Appellant alleges eight points of error by the trial court: 1) holding appellant responsible for all federal income tax liability incurred during the marriage; 2) awarding appellee 70% of the community estate; 3) awarding appellee all of the cash on deposit in the accounts of the parties; 4) awarding appellee a judgment of $23,870; 5) awarding appellee a judgment of $9,400; 6) awarding appellee reimbursement of all of the proceeds from the sale of her separate property; 7) awarding appellee a Deed of Trust Lien secured by "every stick and stone" of appellant's separate property; and 8) awarding appellee attorney's fees of $3,500. We overrule all points.

■ We first note that no findings of fact or conclusions of law were requested by appellant. In a trial to the court where no findings of fact and conclusions of law are filed, the judgment of the trial court implies all necessary fact findings in support of the judgment. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam); *Buchanan v. Byrd*, 519 S.W.2d 841, 842 (Tex.1975). The judgment of the trial court in such cases must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968); *see also Point Lookout West v. Whorton*, 742 S.W.2d 277, 279 (Tex.1987) (per curiam). Therefore, appellant has an extraordinary burden to demonstrate error in the trial court's judgment since we must presume all facts were found against appellant. *Point Lookout West*, 742 S.W.2d at 279.

In point one, appellant complains of the imposition of all federal income tax liability incurred by the parties during the marriage. Specifically, appellant complains that potential income tax liability arising from the sale of appellee's separate proper-

ty residence should not be borne by appellant. Appellant argues that because appellee was allegedly awarded a "disproportionate share" of community assets, appellee should be liable for the same proportionate share of tax liability. Finally, appellant argues there is no evidence supporting any such tax liability.

■ In his brief, appellant describes his involvement in the sale of appellee's separate property. The parties had previously been married to each other, and appellee was awarded this residence in their divorce of 1976. Appellant testified at trial that he was present when appellee sold the house, and appellant even claims to have paid transaction costs of $1,000. In addition, he knew the buyer to be a drug dealer. The buyer paid $45,000 for the property, even though appellant "discussed" with the buyer "getting thirty-five thousand" for it. The buyer told appellant "he was fixing to be busted and he was fixing to go down and he had some money he had to get rid of." Appellant testified "I didn't know if Internal Revenue would come in and claim the money." This money was not reported as income, and was kept in a deep freeze at the community residence. Therefore, there is evidence of potential tax liability from appellant's own testimony.

Next we address appellant's legal liability for the proceeds of the sale. The property was sold in 1986 during the marriage. The parties filed a joint tax return for the year of 1986. Under federal law, if a couple files a joint income tax return, each spouse is jointly and severally liable for the tax due, even if only one spouse had income. I.R.C. sec. 6013(d)(3) (1989); Treas. Reg. sec. 1.6013-4(b) (1989). The "innocent spouse rule" is of no help to appellant since he knew of the sale and thus knew about any substantial understatement of taxable income as a consequence of the sale. I.R.C. sec. 6013(e)(3) (1989).

■ While a tax liability is not technically a "debt," a court may take tax liability into consideration in the division of property upon divorce, and may even require one party to assume the other's tax liabili-

ty. *Able v. Able,* 725 S.W.2d 778, 780 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Vautrain v. Vautrain,* 646 S.W.2d 309, 317 (Tex.App.—Fort Worth 1983, writ dism'd); *Benedict v. Benedict,* 542 S.W.2d 692, 698 (Tex.Civ.App.—Fort Worth 1976, writ dism'd); *Cole v. Cole,* 532 S.W.2d 102, 105 (Tex.Civ.App.—Dallas 1975, no writ); *Brooks v. Brooks,* 515 S.W.2d 730, 733 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). We hold this is particularly true when both parties are liable for the debt under federal law. Therefore we hold the trial court acted within its authority in holding appellant responsible for federal income tax liability during the marriage. Point one is overruled.

■ In point of error two, appellant alleges the trial court abused its discretion in awarding appellee 70% of the community estate. We observe that appellant does not challenge the trial court's characterization of property. Therefore, we only look to the trial court's division as it appears in the Nunc Pro Tunc Final Decree of Divorce. At the hearing, appellant's counsel asked the court to explain the "70–30" division of property, discussed from the bench, to which the court said "70–30 of the only community assets that I can actually find that I haven't already divided. That's the cash." It thus appears the court intended to make such a 70–30 division of cash community property assets after dividing other assets. Indeed, the Nunc Pro Tunc Final Decree of Divorce reveals that noncash assets were apparently divided evenly, and perhaps even in the appellant's favor. The community residence was ordered sold with the proceeds split one-half to each party with appellant bearing transaction and other costs. Appellant was also awarded three automobiles, a tractor, a boat, trailer, and assorted personal items. Appellee was awarded real property worth $8,000 (as property bought during the marriage with her separate property), one vehicle, and assorted personal items.

In regards to the cash assets of the estate, the trial court awarded all cash under each party's control to that party. The accounts, however, were all in appel-

lant's name. The trial court went on to award appellee a judgment of $23,152.90, apparently in order to effect its 70–30 division of the community cash assets.

Appellant argues there is a "conflict within the Decree of Divorce as to how much 70% is equal to in the Community Estate." This apparently refers to the trial court's summation at the hearing of the assets where it "found" $34,100 of community cash and said "she gets an additional judgment for twenty-three thousand eight hundred and seventy" (70% of $34,100). This alleged conflict is asserted in other points of error below. We hold that at the hearing the trial court was merely summarizing how he intended to dispose of various assets, rounding dollar figures to convenient sums for purposes of discussing with counsel how he would arrive at a final judgment. Obviously, when the trial court precisely calculated all these assets for the written final decree, it was not the same as the round working figures used at the hearing. Thus, the reference to the $23,870 figure is of no consequence. We look to the written decree for the final judgment ($23,152.90), therefore we find no conflict.

As to the division itself, we note that the Texas Family Code provides that the trial court must equitably divide the community estate upon divorce:

(a) In a decree of divorce or annulment the court shall order a division of the estate of the parties [the community] in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

TEX.FAM. CODE ANN. sec. 3.63 (Vernon Supp.1990). This provision has been interpreted by the Texas Supreme Court to allow the trial a great deal of discretion in dividing the community estate:

[T]he trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of sepa-

rate estates, and the nature of the property. We believe that the consideration of such factors by the trial court is proper in making a "just and right" division of the property. Likewise, the consideration of a disparity in earning capacities or of incomes is proper....

*Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). The trial court may determine that one party is entitled to a greater share of the community to effect a just and equitable division. *Id.* Appellant argues that there is "no evidence" as to these factors. However, we find a wealth of such evidence. Appellee pled that appellant committed adultery and testified that "I knew he's running around on me again." Appellee testified that while she was ill due to cancer treatment, she was unable to engage in sexual relations, and appellant became angry and abusive when appellee refused to perform oral sex on him. Appellee testified this anger developed into cruel treatment including threats by appellant ("'You go out that door, and you're dead.'"; "'I ought to blow your ass away.'") and a physical attack involving grabbing, shoving and so forth ("And he grabs me around the head and squeezes me. Like to broke my glasses and drug me in there and slammed me down on the couch."). We hold this testimony indicates fault in the divorce on the part of appellant, which may be considered in the division of the community property in a fault based divorce. *Murff*, 615 S.W.2d at 699; *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). In addition, appellee testified that she is undergoing treatment for lung and kidney cancer, which requires numerous trips to Houston, thus indicating a physical condition requiring substantial resources to treat. *See Murff*, 615 S.W.2d at 699. Finally, the court indicated the evidence showed "the entire financial dealings of these parties were under the full control of Mr. Mullins [appellant]."

While not every possible factor the court could have considered is developed in the record, we find that there is sufficient evidence to substantiate the trial court's uneven distribution of the community assets as fair and just. In the absence of findings and conclusions, we must presume all of these matters were found against appellant and in support of the judgment, and thus we cannot disturb the trial court's division as an abuse of discretion. *Point Lookout West*, 742 S.W.2d at 279.

■ Finally on this point of error, appellant asserts that "it was the Court's [hostile] attitude toward Appellant and not any other factor that caused the Trial Court to divide the community property of the parties with such great disparity." Appellant is correct in saying the trial court should not use the property division to punish the party at fault in the divorce, although fault may be taken into consideration in making the property division. *Young*, 609 S.W.2d at 762. Appellant argues that the trial court was punishing appellant for being of bad character (a police officer dealing with a drug pusher), not that the court was punishing appellant for his fault in causing the divorce as prohibited in *Young. Id.* However, without findings and conclusions we need not reach this distinction.

It is true that the record is replete with the trial court's comments on his view that "the house [appellee's separate property] was sold to a known drug dealer by a retired Fort Worth Police Officer [appellant]." For example, we note the following reflections by the trial court:

> [I]n the opinion of the Court, there's probably more than that to it since the retired Police Officer was paid $10,000 in excess of what the house was worth. I frankly, Mr. Mullins, consider that there is something very seriously wrong with a retired Police Officer dealing with a known dope pusher and selling property to a known dope pusher.
>
> ....
>
> And I still don't like policemen who deal with dope dealers.

In the absence of findings and conclusions, we cannot determine if the trial court used the property division to punish appellant, for whatever reason, even though some of the court's language at the hearing borders on being abusive and threatening. Without findings and conclusions we must pre-

sume that the trial court relied on proper evidence for the property division, for which there is supporting testimony in the record, and did not act out of motives to punish. Thus, we hold the property division was proper and within the discretion of the trial court. Point two is overruled.

■ In points of error three and six, appellant complains of the reimbursement award of $33,500 to appellee for her separate property used to enhance appellant's separate property. *See Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982); *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620, 627 (1935). Appellant argues that appellee did not meet her burden in proving up the reimbursement claim. However, without findings and conclusions, the test on appeal is whether *any* evidence supports the judgment. *Seaman*, 425 S.W.2d at 341. At the time of the parties' marriage in 1986, appellee owned her home at 4612 Trueland Drive in Fort Worth. She was awarded the home when the parties were previously divorced in 1976. Appellee sold the home for $45,-000. Appellant paid closing costs of $1,000. According to appellant, the buyer was a drug dealer. Appellee put the entire cash amount into a deep freeze at the parties' new home. Appellee and the parties' daughter testified that much of this money was spent on improving appellant's rental properties (his separate property).

The parties' daughter testified that appellee spent $8,000 of the $45,000 to purchase the property on which the daughter and her family now live (referred to as Pelican Bay properties). The trial court characterized this property as appellee's separate property. Appellee gave $2,500 as a gift to the parties' son, also out of this $45,000. Thus, the trial court awarded the balance of $33,500 ($45,000 − $1,000 − $8,000 − $2,500) as reimbursement for her separate property assets expended to improve appellant's separate rental properties. The court affected this reimbursement by awarding appellee all cash community assets on deposit in appellant's various accounts ($22,875.57) and a money judgment for the balance ($10,624.43).

In point three, appellant claims that it was error for the trial court to award all the community cash assets on deposit in appellant's various accounts to appellee toward the satisfaction of her reimbursement award.

As to the reimbursement award itself, we recognize that there is some testimony indicating that not all of the proceeds from the sale of appellee's separate property house was expended on appellant's separate property, a portion of it having been disbursed as a gift to the son, and a portion having been expended on the Pelican Bay properties. Appellee herself testified that another $5,000 of this freezer money was spent on groceries for the parties' consumption, and she agreed she "donated that five thousand of it to the community." Setting aside whether it is legally possible to make a gift to the community, it seems this expenditure should affect an additional reduction of the reimbursement if a gift to the community was in fact found by the court. However, there is also evidence from the daughter indicating that $45,000 or perhaps more of appellee's separate property was spent on appellant's property. Thus, in the absence of findings of fact, we must presume the trial court found this fact question against appellant. *Point Lookout West*, 742 S.W.2d at 279. Given that there is evidence in the record to support this reimbursement award, however controverted or impeached, we cannot disturb the trial court's disposition of the matter on appeal.

Appellant again complains that "it was the Court's [hostile] attitude toward Appellant and not any other factor that caused the Trial Court to order the reimbursement of substantially all of the $45,000.00 to Appellee." As discussed in point of error two, without findings and conclusions, we cannot assume that the trial court acted with such improper motives so long as there is any evidence in the record to support the judgment. Points three and six are overruled.

In point four, appellant claims the trial court erred in awarding appellee a $23,870 judgment, as representing 70% of the par-

ties' cash community assets. As discussed under point two, this figure discussed by the court at trial was not the actual award (which was $23,152.90) but was merely a frame of reference used by the court in discussing the division of property when the parties were presenting evidence. The final decree is the relevant judgment, and we have held in point two that the division was proper and within the trial court's discretion. The $23,870 figure is of no consequence. Point four is overruled.

In point of error five, appellant again confuses the trial court's working figures at trial with the actual final decree. This point alleges the trial court erred in awarding appellee a judgment against appellant of $9,400. This was the general figure used by the trial court at the hearing to indicate the sum needed to complete appellee's reimbursement award. This figure was merely a working number—a frame of reference used by the trial court, and no such judgment was imposed on appellant. In the final decree, the trial court actually awarded a judgment of $10,624.43 when precise dollar figures were put to writing in the final decree. This is the amount needed to complete the reimbursement award to appellee when added to her award of all community cash assets. Appellant does not challenge the $10,624.43 award in the decree in this point. Given that the $9,400 figure is of no consequence, point five is overruled.

■ In point seven, appellant claims the trial court erred in securing appellee's money judgments against appellant with a note and Deed of Trust Lien on every item of appellant's separate property. The final decree indicates that both the community award and the reimbursement award was secured by such a lien or liens. In his argument, appellant focuses on the propriety of the liens to secure the reimbursement award. We hold that the trial court committed no error.

■ First, we note that appellant concedes that it is a "long standing rule that permits divorce courts to attach a lien to secure an award of reimbursement for improvements." *See Kamel v. Kamel*, 760

S.W.2d 677, 680 (Tex.App.—Tyler 1988, writ denied); *Smith v. Smith*, 715 S.W.2d 154, 160 (Tex.App.—Texarkana 1986, no writ); *Cook v. Cook*, 665 S.W.2d 161, 165 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.); *Day v. Day*, 610 S.W.2d 195, 198 (Tex. Civ.App.—Tyler 1980, writ ref'd n.r.e.). Appellant argues that the lien should only be applied to the separate property that was improved by appellee's separate property, and that a deed of trust is improper. Appellant cites *Smith*, 715 S.W.2d 154 where the Texarkana Court of Appeals indicated it believed a divorce court is only authorized to impose an *equitable* lien on the improved separate property for a reimbursement claim, and is not authorized to impose a deed of trust. *Id.* at 161. That court also said the lien should only attach to the separate property that was improved. *Id.*

■ We disagree with the Texarkana court and hold that a deed of trust lien is proper here, and that it may, as ordered by the trial court, attach to any of the reimbursement debtor spouse's separate property. The deed of trust lien is merely a means to evidence this lien that arises from equity. *See Buchan v. Buchan*, 592 S.W.2d 367, 371 (Tex.Civ.App.—Tyler 1979, writ dism'd). A deed of trust is merely a means of formalizing this "equitable" lien in order to make enforcement by appellee more expeditious, should that become necessary. As to what property may properly be encumbered by the lien, we find ample authority that a divorce court is "vested with authority to fix a lien on the separate property of one spouse to secure the discharge of payments by the owner of the property to the other spouse." *Cook*, 665 S.W.2d at 165. *See also Bowden v. Knowlton*, 734 S.W.2d 206, 208 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Lettieri v. Lettieri*, 654 S.W.2d 554, 559 (Tex.App.—Fort Worth 1983, writ dism'd); *Buchan*, 592 S.W.2d at 371; *Goetz v. Goetz*, 567 S.W.2d 892, 896 (Tex.Civ.App.—Dallas 1978, no writ); *Bell v. Bell*, 540 S.W.2d 432, 441 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *In re Marriage of Jackson*, 506 S.W.2d 261, 267 (Tex.Civ.

App.—Amarillo 1974, writ dism'd); *Mozisek v. Mozisek*, 365 S.W.2d 669, 670 (Tex. Civ.App.—Fort Worth 1963, writ dism'd). While these cases deal primarily with encumbering one spouse's separate property to secure a community property claim awarded to the other spouse (typically to secure a claim reduced to a money judgment where one spouse gets title to community or improved separate property) we see no reason, and neither appellant nor the Texarkana court direct us to any, that a divorce court should not have the same discretion to encumber other separate property for reimbursement claims. To preclude such encumbrances would leave a divorced spouse without any security for a reimbursement claim if the improved separate property had been sold, destroyed, or otherwise disposed of. Point of error seven is overruled.

In point of error eight, appellant asserts the trial court erred in awarding appellee attorney's fees of $3,500. We find no error in this award. The Family Code provides that reasonable attorney's fees may be awarded by the trial court in a divorce proceeding. TEX.FAM. CODE ANN. sec. 3.77 (Vernon Supp.1990). Appellee's counsel testified that he had a contract with appellee, and that pursuant to the contract he had prepared documents, made court appearances, filed documents, prepared motions, and estimated the total attorney fee would be $4,584.75 for the case. On cross-examination, appellant's counsel elicited further evidence of appellee's attorney's fees such as specific dates of hearings and what matters needed special legal attention (temporary restraining orders, motions to extend these orders, and a court hearing on a Temporary Restraining Order that took four and one-half hours). The cases cited by appellant involved situations where there was either no evidence at all of attorney's fees or only evidence of the counsel's opinion as to the fee without any specifics. *See Leal v. Leal*, 628 S.W.2d 168, 170 (Tex.App.—San Antonio 1982, no writ); *Saums v. Saums*, 610 S.W.2d 242, 243 (Tex.Civ.App.—El Paso 1980, writ dism'd). Here there is specific evidence of what services appellee's counsel had rendered, and we find no reason to consider these services other than reasonable.

Once again, appellant complains the trial court is merely punishing appellant, here by imposing attorney's fees. We see no reason to give credence to this suspicion, again since we have no findings or conclusions to indicate on what basis attorney's fees were awarded. Appellant also complains that the evidence is not specific enough (*i.e.*, no time slips, no estimate of hours spent, etc.) but refers us to no authority requiring such detailed evidence to recover attorney's fees in a divorce case. Judging from the record reference in his brief, appellant also seems to be arguing that appellee's counsel was not doing an adequate job in his failing to have "a proper inventory" and merely approximating the value of some costs. On that score, we note that appellee was only awarded $3,500 as opposed to the $4,584.75 figure appellee's counsel testified appellee had incurred. We hold there was adequate evidence in the record to support the award of attorney's fees to appellee, and we find no abuse of discretion by the trial court in awarding these fees. Point eight is overruled.

We affirm the judgment.