Dennis Wayne JONES and Edgar
Wayne Jones, Appellants,

v.

Kathryn Lynn JONES, Appellee.

No. 6–90–019–CV.

Court of Appeals of Texas,
Texarkana.

Feb. 20, 1991.

Minor E. Pounds, Minor E. Pounds and
Associates, Dallas, for appellants.

David C. Turner, Bonham, for appellee.

Before CORNELIUS, C.J., and BLEIL
and GRANT, JJ.

OPINION

GRANT, Justice.

Dennis and Edgar Wayne Jones appeal
from the property division made concur-
rently with Edgar's divorce from Kathryn
Jones.

Edgar Wayne Jones and Kathryn Lynn
Jones were married on June 13, 1979, and
separated on November 17, 1987. Their
divorce became final on November 22,
1989. The case was heard by the court

without a jury. The trial court divided the personal and real property of the parties and found that three parcels of real estate and specific personalty had been transferred in fraud of the community to Dennis, Edgar's son by a previous marriage. Dennis was made a party to the suit by Kathryn. The court ordered Dennis to execute documents conveying the property to Edgar and Kathryn. The decree also granted a money judgment to Kathryn, secured the judgment by a lien on portions of Edgar's separate real property and directed that the other property be sold to pay off community debts.

The Joneses bring twenty-eight points of error, twenty-seven of which attack the characterization or division of the property. In the last point, they complain of the admission of particular testimony.

The main thrust of the appellants' argument is their contention that portions of real estate which Edgar had once owned were improperly considered by the trial court in its division of the estate and that the court abused its discretion by acting outside the bounds of the law when it ordered Dennis to convey the realty to Edgar, or to Edgar and Kathryn jointly.

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial judge may decide a matter within his discretionary authority differently than an appellate judge does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985), *cert denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

There are four parcels of realty involved in the divorce proceeding, and for reference we shall refer to them by the following parcel numbers:

1) The lot and their residence in Trenton;
2) The lot and the duplex, located in Trenton;
3) The lot and the Bailey Warehouse, located in the town of Bailey; and

4) A vacant lot in Trenton.

The first three parcels were owned by Edgar prior to his marriage to Kathryn, thus they were his separate property. Originally parcels # 1 and # 2 were owned by Edgar as one piece of property.

In 1983, Edgar and Kathryn executed warranty deeds transferring title in parcels # 2 and # 3 to his son, Dennis. According to the testimony, Edgar and Kathryn did not receive any consideration from the transfer and only executed the documents in an effort to defeat (then) anticipated judgments against them in pending lawsuits.

Although Kathryn joined her husband in the execution of the deeds transferring parcels # 2 and # 3, her signature was unnecessary because they were Edgar's separate property. A spouse may sell his separate property during marriage, even for a wholly inadequate price. *See* TEX. FAM.CODE ANN. § 5.21 (Vernon 1975). The question is whether the trial court had the power to direct Dennis to convey parcel # 3 back to Edgar and parcel # 2 back to Edgar and Kathryn jointly.

Even though the consideration given by the son to his father (Edgar) was clearly inadequate, the father (Edgar) could do with his separate property as he saw fit. He could have given his separate property to his son, so it is not reasonable to hold that the transfer was void because of inadequacy of consideration. Nevertheless, at least in the instance of the property containing the duplex, Edgar's separate estate had been benefitted from contributions made to it by the community. Had the property transfer been made at or near the time Edgar and Kathryn separated, it could have been inferred that the transfer was made in order to avoid reimbursing the community for the improvements thereon. The transfer could be considered a fraud on the community (as was found by the trial court), and this fraud could support the court's order requiring the property be reconveyed to Edgar. That was not the situation. These transfers were made four years before the divorce proceeding was

initiated, and although fraud was clearly intended, the evidence showed that it was not directed toward the community but was on behalf of the community in order to avoid loss to potential judgment creditors. The trial court erred by including this property in its division of the community and by directing Dennis to reconvey the property.

■ Parcel #4, the vacant lot, stands in a somewhat different light. It was deeded by *Edgar's brother* to Dennis at the same time that parcels #2 and #3 were deeded to Dennis. Record title to parcel #4 was never in Edgar's or Kathryn's name. The property had belonged to Edgar's parents, who apparently died during Edgar's marriage to Kathryn. Although record title was in the brother's name, there was testimony that Edgar had made a cash payment of $2,000 for his "brother's part of the property," and that Edgar also agreed to make the payments on yet another piece of property, presumably in order to obtain parcel #4. In 1986, a small house on parcel #4 burned, and despite the fact that title was in Dennis' name, Edgar and Kathryn collected the insurance proceeds, which were applied toward extinguishing a judgment against Edgar in an assault case. There is evidence that all the benefits (the rent, insurance proceeds and tax write-offs) were utilized by the community, and that all of the purchase price for the property was presumptively paid by the community. Despite the fact that record title was in Dennis' name, the evidence could support a finding by the trial court that equitable title resided in the community.

The appellants correctly argue that even if equitable title to parcel #4 rested with the community, the community could not enforce its claim because the transfer was made in order to defraud creditors. In *Letcher v. Letcher*, 421 S.W.2d 162 (Tex. Civ.App.—San Antonio 1967, writ dism'd), the court reviewed a situation in which the husband executed a deed transferring his separate real property to his wife in an effort to defeat a potential judgment creditor. The judgment never materialized, and when the husband later attempted to divorce his wife, the court held as follows:

As between the parties to a fraudulent transaction, the transfer designed to defraud creditors passes title to the property, and the grantor may thereafter assert no right, title or interest in the property. Relief will be denied a grantor who seeks to set aside a deed on the grounds it was executed to defraud his creditors, for courts leave parties to a fraudulent transaction in the position they have placed themselves.... Where a person conveys land by a deed absolute on its face and without consideration, in fraud of his creditors, though with an understanding that the land is only to be held in trust, neither he nor his heirs can enforce the trust against the grantee.

*Letcher*, 421 S.W.2d at 169.

No findings of fact or conclusions of law were filed in this case, thus the judgment of the trial court must be affirmed on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716 (Tex.1984).

The parties admitted that the transactions were designed to defeat collection by judgment creditors. However, Kathryn testified that because of Edgar's violent history toward her, she was afraid that if she had not signed the deeds conveying parcels #2 and #3 (the lot and duplex and the Bailey warehouse), Edgar would have beaten her. As a victim of duress or undue influence, Kathryn would have a right in equity to attack the transfers and go behind the face of the documents reflecting the change of ownership. However, she did not testify that she was acting under duress as to parcel #4, the vacant lot, when title was taken in Dennis' name. There was also no evidence that Kathryn ever voiced a complaint or objected to anyone about the fraudulent effort to avoid their creditors, and the fraud was clearly calculated to benefit her as well as her husband. Thus, the trial court abused its discretion by ordering that parcel #4 be conveyed to Edgar and Kathryn jointly.

The appellants also complain that there was insufficient evidence to support the trial court's finding of a $33,106 enhancement by the community to Edgar's sepa-

rate property. This enhancement deals in part with parcel # 1, which was never transferred out of Edgar's name.

In reviewing the evidence for factual sufficiency, we examine the entire record to determine whether the finding is clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

The general rule is that when assets of one estate are used (other than by gift) to enhance another estate, a prima facie case for reimbursement is established. *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328 (1943). The right to reimbursement is an equitable right which arises upon the dissolution of a marriage, and its application lies within the discretion of the court. *Vallone v. Vallone*, 644 S.W.2d 455 (Tex.1982). The claim has been described as being in the nature of a charge upon the property so improved. *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620 (1935). A claim for reimbursement for funds expended by one estate for improvements to another estate is to be measured by the enhancement in value to the benefitted estate. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985). In determining the measure of enhancement, the distinction once drawn between money expended on capital improvements and money expended for purchase money debt has been specifically removed. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex.1988). The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a just and right division of the community property. *Penick*, 783 S.W.2d at 198; Tex.Fam.Code Ann. § 3.63 (Vernon Supp. 1991). Thus, the trial court must be given great latitude in applying equitable principles to numerous factors when valuing a claim for reimbursement. *Penick*, 783 S.W.2d at 198.

In the instant case, the residence was subject to a $5,000 loan at the time of the marriage. Edgar and Kathryn borrowed an additional $13,000 for improvements on the house, in which Edgar did the construction work. There is no testimony about the value of his labor in making the improve-

ments. The balance remaining on both of these notes at the time of the dissolution of the marriage was $1,759.33. Thus, there is evidence that the community paid off approximately $16,000 of loans against the residence and that an unspecified amount of community labor went into the remodeling because Edgar did it himself.

They also remodeled a four-car garage attached to the residence, turning it into a business showroom for Jones Designer's Choice (a furnishings warehouse run by Kathryn). In order to fund this business, they borrowed $35,000 from the Small Business Administration. There is nothing in the record to show that any of this loan was used for the actual construction of the showroom.

■ Edgar and Kathryn also had obtained a $33,106 loan to build a duplex on the western part of the residence lot. The lot was later divided, and the portion containing the duplex was transferred to Dennis. The community continued to make payments on the loan even after its transfer to Dennis (with $18,000 balance at the time of the divorce) and also collected the rent from the duplex until the divorce was filed. However, ownership of the duplex and its lot did not reside in Edgar at the time of divorce; and as previously discussed, it was not transferred in a manner which could be described as a fraud against the community. Reimbursement for the community does not extend to recovery for improvements on separate property that was lawfully disposed of during the marriage. Thus, the community expenditures on the duplex cannot be considered in support of the reimbursement determination. The remaining evidence is insufficient to support the amount of the reimbursement awarded.

■ Edgar further contends that the court erred as a matter of law by securing a $30,000 money judgment to Kathryn by a lien against the Bailey warehouse and his separate property residence. As previously discussed, Edgar no longer owns the Bailey warehouse, thus the lien against it cannot stand. As to the residence, a lien against it does not comprise an unconstitu-

tional taking of separate property, as argued by Edgar. The imposition of an equitable lien on one spouse's separate property to secure the payment of a money judgment as part of the wife's interest in the total property of the parties is not error. *Mullins v. Mullins*, 785 S.W.2d 5, 11 (Tex.App.—Fort Worth 1990, no writ); *Bell v. Bell*, 540 S.W.2d 432, 441 (Tex.Civ. App.—Houston [1st Dist.] 1976, no writ); *Mea v. Mea*, 464 S.W.2d 201, 206 (Tex.Civ. App.—Tyler 1971, no writ); *see Hanson v. Hanson*, 672 S.W.2d 274, 279 (Tex.App.— Houston [14th Dist.] 1984, writ dism'd).

Edgar also argues that the trial court erred by holding that the boat and travel trailer were community property, despite record title being held in Dennis' name. Kathryn testified that Edgar and she purchased the boat from Dennis while judgments against them were still outstanding. Title was never transferred. Kathryn also testified that they had paid the former owner $2,600 for the Star Sea travel trailer and provided documentary evidence to that effect. Title was taken in Dennis' name. There was evidence that the community actually purchased both of these items and placed them in Dennis' name in order to avoid judgment creditors. For the reasons set forth in our discussion of the vacant lot (parcel # 4), which was purchased in Dennis' name, we hold that the trial court abused its discretion by ordering that the property be conveyed to Kathryn.

Edgar Jones next contends that the trial court erred in its division of the estate by incorrectly awarding portions of his separate personalty to Kathryn. Separate personal property may not be divested by the trial court as part of a property division. *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982). Edgar specifically complains that the court improperly awarded the following separate personalty to Kathryn: a table lamp, two end tables, a rectangular coffee table, an antique sofa table, porcelain birds, Noritake china, two silver candelabras, a silver tea service, a Chinese dragon vase, a refrigerator, an "elephant bridge", an old coffee grinder, a pepper mill and salt shakers, and one-half of a decanter and glass set. Kathryn testified

that Edgar had given her the candelabras and the tea service and that the refrigerator and the "elephant bridge" were purchased during the course of the marriage. Thus, there is evidence that these pieces were either her separate property or property of the community.

Kathryn, however, also testified without reservation that the table lamp, end tables, coffee table, sofa table, Noritake china, tea service, Chinese dragon vase, the coffee grinder, pepper mill and salt shakers, and some of the porcelain birds belonged to Edgar prior to their marriage. The tea service could properly be awarded to Kathryn as having been received as a gift. By Kathryn's admission, all the other items listed are Edgar's separate property and cannot be awarded to her. The trial court erred in so doing.

Kathryn also testified that the decanter and glass set was a gift to Edgar and her. As a gift, it cannot be community property, but must be characterized as separate property co-owned by Kathryn and Edgar. TEX.FAM.CODE ANN. § 5.01 (Vernon 1975). Therefore, it cannot be awarded completely to Kathryn.

Edgar also contends that the court erred in admitting Kathryn's testimony that if she had not executed the deeds Edgar would have beaten her. Counsel argues that this was inadmissible, as it was pure speculation. This point is not further argued in the brief. The testimony was preceded by extensive evidence about his continuing violent actions toward her whenever she opposed his desires. It was not pure speculation; rather, it was an opinion rationally based on the knowledge of the witness, and thus admissible. *See* TEX.R. CIV.EVID. 701.

In order to support a reversal, any legal error committed by the trial court must cause the property division to be so disproportionate in nature as to be manifestly unfair. *Reid v. Reid*, 658 S.W.2d 863 (Tex. App.—Corpus Christi 1983, no writ); *see generally, Mundy v. Mundy*, 653 S.W.2d 954 (Tex.App.—Dallas 1983, no writ). The question then, is whether the errors caused

the property division to be so unfair as to constitute an abuse of discretion. The combination of the improperly characterized property and the excessive reimbursement under the facts is sufficient to constitute such abuse.

The judgment of the trial court is reversed and remanded for a new trial to be conducted in accordance with this opinion.