Emory Edwin MAZIQUE

v.

Sylvia Yvonne MAZIQUE.

No. 01–87–00359–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 3, 1987.

Sarnie A. Randle, Jr., Randle & Associates, Houston, for appellant.

Dennis B. Kelly, Law Offices of Dennis B. Kelly, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a monetary award in a final decree of divorce.

The appellee, Sylvia Yvonne Mazique, sued appellant, Emory Edwin Mazique, for a divorce alleging, among other things, that the appellant had fraudulently deprived her of a portion of the community estate. After a non-jury trial, the court made a monetary award to the appellee in the amount of $30,000 as actual damages, and $5,000 as exemplary damages. Findings of fact were requested, but if findings were made, they were not brought forward as part of the appellate record. In two points of error, the appellant challenges the actual and punitive awards, contending that there is no evidence or insufficient evidence to support the court's finding that the appellant committed fraud on the community.

The parties were married in June 1961, and ceased living together as husband and wife in February 1986. They have three children, all of whom live at home with the appellee. Their daughter, Kicha, is 22 years old and a student at the University of

Houston; their older son, Mark, is 21 years old and a student at Rice University; and their younger son, Marlon, is 17 years old and a student at St. John's High School in Houston. The appellant is a licensed physician in private practice specializing in internal medicine, and the appellee is a health educator for the City of Houston.

The appellant admitted having sexual relationships with at least 5 women during the course of his 25-year marriage, the first occurring within several weeks following his marriage. These relationships lasted from a few weeks to several years. The appellant admitted that he spent varying sums of money on these women to pay for trips out of town, meals, gifts, dresses, and local hotels. The appellant testified that he usually arose about 10:30 to 11 o'clock each morning, went to his office and made hospital rounds during the afternoon, and then socialized at the Groovy Cafe or some other lounge until 2 to 4 o'clock in the morning. He conceded that he was not around the children when they were going to or from school, and that he was not usually home in the evenings. By the appellant's own admission, he could not recall exactly how many extramarital affairs he had during his marriage, the names of all the persons with whom he had affairs, or how much money he had spent on his various sexual activities.

The appellant testified that some of his patients paid for his professional services in cash, and that he usually collected about $100 in cash each day when he was in the office. He said that he used some of the cash for his daily spending money and estimated that he took from $30 to $100 from the cash receipts each day. He estimated that during the last several years of his marriage, he had taken some $5,700 in cash receipts each year for his own use, and that he had taken cash out of the business from the time he first began his practice in the mid-1960's. He admitted that his deposits of over $130,000 to his bank account in 1984 reflected his earnings, although he only reported about $93,000 in cash receipts on his 1984 income tax return. He admitted that he had never accounted to his wife for the money he had taken, and

that on one occasion he told his wife she would never know how much he had taken from the business.

Although the appellant blamed his extramarital sexual activities on his wife's refusal to engage in sex with him, the trial court, as the trier of fact, was not bound to accept his version of the facts. Neither was the trial court required to accept as true the appellant's testimony that tended to show that his wife was responsible for mismanagement of funds he had given her. While the evidence tends to show that both spouses spent freely and without regard to financial consequences, the court could reasonably have concluded that the appellant's lifestyle was the principal cause of the parties' financial difficulties. Indeed, the court could have decided that the appellant had shown little regard for the preservation of the family's community assets and that he had continuously used community funds to meet his own personal needs. Because of the appellant's continuous withdrawal of cash receipts, without any attempt to account to his wife, to the federal government, or to the mortgage company, the court necessarily had to apply a broad yardstick to measure the extent to which the appellant's conduct had damaged the community estate. The court's award of actual damages was within the range of the evidence showing the amount of cash that the appellant had taken from the community funds, and for which no accounting was ever made.

■ In the absence of fraud on the other spouse, the managing spouse has the sole right of control and disposition of the community property as he or she sees fit. *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48, 50 (1962). Thus, it is unnecessary for the managing spouse to obtain the approval or agreement of the other spouse to dispositions of the managing spouse's special community property. *Horlock v. Horlock*, 533 S.W.2d 52, 55 (Tex.Civ.App.— Houston [14th Dist.] 1975, writ dism'd w.o. j.). But a trust relationship exists between a husband and wife as to that portion of the community property controlled by the managing spouse, *Carnes v. Meador*, 533

S.W.2d 365, 370 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Brownson v. New,* 259 S.W.2d 277, 281 (Tex.Civ.App.—San Antonio 1953, writ dism'd w.o.j.), and a presumption of fraud arises when a spouse unfairly disposes of the other spouse's one-half interest in the community. *Carnes,* 533 S.W.2d at 370. If the managing spouse violates his or her duty to the other spouse, a personal judgment for damages may provide a means for recoupment of the value lost to the community as a result of the constructive fraud. *Belz v. Belz,* 667 S.W.2d 240, 247 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Swisher v. Swisher,* 190 S.W.2d 382, 384 (Tex.Civ.App.—Galveston 1945, no writ).

The managing spouse may make moderate gifts for just causes to persons outside the community. *Hartman v. Crain,* 398 S.W.2d 387, 390 (Tex.Civ.App.—Houston 1966, no writ). But a gift of community funds that is capricious, excessive, or arbitrary may be set aside as a constructive fraud on the other spouse. *Horlock,* 533 S.W.2d at 55; *see also Givens v. Girard Life Ins. Co. of America,* 480 S.W.2d 421, 424–25 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

The burden is on the managing spouse to prove that a gift or disposition of community funds was not unfair to the rights of the other spouse. *Jackson v. Smith,* 703 S.W.2d 791, 795 (Tex.App.—Dallas 1985, no writ); *Redfearn v. Ford,* 579 S.W.2d 295, 297 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Thus, constructive fraud will usually be presumed unless the managing spouse proves that the disposition of the community funds was not unfair to the other spouse. *Carnes,* 533 S.W.2d at 370.

When the fairness of the transaction is brought into question, the non-managing spouse does not have to prove that the gift to a third party was motivated by actual fraudulent intent or that the gift was otherwise unfair. *Murphy v. Metropolitan Life Ins. Co.,* 498 S.W.2d 278, 282 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). In considering the fairness of the transaction, the courts may look to the relationship between the managing spouse and the person to whom the gift was made; whether there were any special circumstances tending to justify the gift; and whether the community funds used for the gift were reasonable in proportion to the community estate remaining. *Redfearn,* 579 S.W.2d at 297. Similarly, where the managing spouse has received community funds, and the time has come to account for such funds, the managing spouse has the burden of accounting for their proper use. *Maxwell's Unknown Heirs v. Bolding,* 36 S.W.2d 267, 268 (Tex.Civ.App.—Waco 1931, no writ).

We hold there is legally and factually sufficient evidence to support the trial court's award of actual damages, and that its award is not against the great weight and preponderance of the evidence.

The first point of error is overruled.

The appellant challenges the award of exemplary damages solely on the ground that the evidence is legally and factually insufficient to support the award of actual damages. Because we have found the evidence sufficient to support the award of actual damages, we also overrule the second point of error.

The judgment of the trial court is affirmed.