**Marie JEAN, Appellant,**

v.

**Velva A. TYSON–JEAN and Terrell Joseph Jean, Appellees.**

No. 14–01–00915–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 15, 2003.

Rehearing Overruled Nov. 13, 2003.

Shawn Russel Casey, Raphael V. Wilkins, Houston, for appellant.

Yolanda Denise Clay, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a final divorce decree denying appellant an ownership claim in real property. Appellant asserts three points of error, arguing the trial court improperly gave full faith and credit to a disputed deed. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

Appellees Velva A. Tyson–Jean and Terrell J. Jean initiated divorce proceedings against each other in April and May, 2000, respectively. Appellant Marie Jean, Terrell's mother, intervened in the suit in November 2000, seeking a declaratory judgment to establish ownership of property included in the community estate.

The property in dispute is located at 1989 Southmore, Houston, Harris County, Texas. It was purchased by appellant's deceased husband Harry Jean—Terrell's father—on January 6, 1989. Although the initial general warranty deed conveying the property to Harry reflects only Harry's name as grantee, appellant was present at the closing and she was aware of the purchase. Indeed, appellant testified that Harry purchased the property for Terrell and his then-fiancée, Velva; that Harry purchased similar properties for "all his kids"; and that appellant was a "willing participant" to the transaction.

Appellant acknowledges that her husband's signature is the only one found on the Deed of Trust; Security Agreement and Financing Statement; and Promissory Note signed by Harry for the lender. She acknowledges, too, that Harry's signature was the only one on the Residential Earnest Money Contract he signed for the seller. Additionally, facts show neither appellant nor her husband ever lived at 1989 Southmore or claimed it as a homestead.

Although there is conflicting testimony as to whether Terrell and Velva were living in the house at the time Harry purchased it, there is agreement that they lived there after Harry's purchase. On February 16, 1990—approximately one year after Harry purchased the property—Terrell and Velva were married. They continued to live in the house together until their separation in 2000.

On August 18, 1990—approximately six months after his son and daughter-in-law were married—Harry signed an assumption warranty deed to Velva and Terrell. Appellant was not a signatory to the deed and claims she had no knowledge of Harry's execution of the deed until some years later—after Velva and Terrell separated. Harry died less than six months after executing the deed to Velva and Terrell. His estate was never probated.

There is conflicting evidence as to who made the down payment, balloon payment, and tax payments on the Southmore property. There is evidence that Velva and Terrell gave Harry the original $13,000 down payment for the house; that Terrell paid the $500 earnest money; and that Harry received $5,000 from Terrell and Velva to conduct the transaction on their behalf. There is also evidence that Terrell and Velva made the final balloon payment on the house in January 1994 with funds from their own savings account and loans from relatives and friends. According to Velva's testimony, these loans included a $1,500 loan from appellant and that was paid back in full. Velva asserts appellant never claimed she held an ownership interest in the property.

Appellant, on the other hand, claims the original purchase money for the property came from Harry's and her own savings account and that she contributed $5,000 in 1994 for Velva's and Terrell's balloon pay-

ment. She claims these funds have not been paid back.

Although Terrell says the original agreement with his father was that Terrell was to maintain the property, make all payments, and assume the note—and that Harry would sell the house to Terrell when Terrell's credit improved—he now claims he has always known his mother had an ownership interest in the property. Indeed, he supports his mother in her assertion that the house is in his father's estate and that appellant never consented to Harry's conveyance of the property to Terrell and Velva.

Evidence exists to the contrary, however: (1) the August 1990 deed from Harry to Velva and Terrell conforms to the agreement Terrell described in his testimony; (2) the deed recites a consideration of $10 and the pay-off of the original note; (3) the deed is signed by Harry only and conveys the property to Velva and Terrell jointly; and (4) documents suggest that Terrell and Velva maintained the property, made the majority of the mortgage payments, paid the utilities and taxes, and paid off the balloon note in 1994.

Appellant testified that Harry was a good husband, good father, and "fine upstanding man." She testified, too, that Terrell is a good son, as well as an "upstanding" and "honorable" man. She does not think Terrell or Harry ever intended to cheat her out of ownership in the Southmore property.

After a bench trial held February 13–19, 2002, the trial court denied appellant's ownership claim in 1989 Southmore and found the property belonged entirely to Velva's and Terrell's community marital estate. Appellant gave timely notice of appeal whereby she seeks to establish her ownership interest in the property and void the assumption deed of August 1990.

## ISSUES ON APPEAL

Appellant asserts three points of error: (1) the trial court erred when it found Harry's conveyance of the Southmore property to his son and daughter-in-law was effective; (2) the trial court erred when it failed to find Harry's son and daughter-in-law were "on notice" that Harry lacked authority to convey the property; and (3) the trial court erred when it found Harry was within the scope of his authority when he conveyed 1989 Southmore without his wife's joinder.[1]

All three points of error pertain to the trial court's conclusions of law in applying subsection 3.104(b) of the Texas Family Code.

## STANDARD OF REVIEW

Conclusions of law are always reviewable. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd). They will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Kotis v. Nowlin*

1. Although appellant states early in her brief that she is challenging the trial court's findings of fact numbered 7, 14, 19, 21, 25, and 26, appellant never in fact addresses the legal or factual sufficiency of these findings. Indeed, she points to no place in the record where the facts are disputed.

When a trial court acts as fact finder, its findings are reviewed under legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex.2000); *Mays v. Pierce*, 154 Tex.

487, 281 S.W.2d 79, 82 (1955); *Cohen v. Sims*, 830 S.W.2d 285, 287 (Tex.App.-Houston [14th Dist.] 1992, writ denied). When appellant makes no challenge to the trial court's fact findings, we are bound by them, same as a jury verdict. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Henry v. Henry*, 48 S.W.3d 468, 475 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Cohen*, 830 S.W.2d at 287.

*Jewelry, Inc.* 844 S.W.2d 920, 922 (Tex. App.-Houston [14th Dist.] 1992, no writ). Conclusions of law will not be reversed, unless they are erroneous as a matter of law. *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 277 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

■ A trial court's conclusions of law are reviewed *de novo* as legal questions. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996); *Precast Structures, Inc. v. City of Houston,* 942 S.W.2d 632, 636 (Tex.App.-Houston [14th Dist.] 1996, no writ). Under *de novo* review, the reviewing court exercises its own judgment and redetermines each legal issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998). Incorrect conclusions of law will not require a reversal if the controlling finding of facts will support a correct legal theory. *Johnston,* 9 S.W.3d at 277.

### THE SOLE–MANAGEMENT PRESUMPTION

■ In her first point of error, appellant asserts the trial court erred in finding Harry's August 1990 deed conveyed an ownership interest in 1989 Southmore to Velva and Terrell. She claims the deed not only failed to transfer *her* interest in the property, it failed to transfer *Harry's interest* as well because 1989 Southmore was part of Harry's and appellant's community estate and so could not be transferred with just one spouse signing the conveyance to Terrell and Velva. *See Dalton v. Don J. Jackson, Inc.,* 691 S.W.2d 765, 768 (Tex.App.-Austin 1985, no writ). We disagree.

2. When two statutes conflict, the general rule of construction is that the specific controls over the general. TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998). *See also Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 901 (Tex.2000).

There is no dispute that the property located at 1989 Southmore was community property during the time Harry held title to it. *See* TEX. FAM.CODE ANN. § 3.003(a) (Vernon 1998) ("[a]ll property possessed by either spouse during or on dissolution of marriage is presumed to be community property"); TEX FAM.CODE ANN. § 3.002 (Vernon 1998) ("[c]ommunity property consists of the property, other than separate property, acquired by either spouse during marriage"). *See also In re McCloy,* 296 F.3d 370, 373 (5th Cir.2002); *Cooper v. Texas Gulf Indus., Inc.,* 513 S.W.2d 200, 202 (Tex.1974); *Smith v. Smith,* 22 S.W.3d 140, 144 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ In general, community property is subject to the "joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." TEX. FAM.CODE ANN. § 3.102(c) (Vernon 1998); *In re McCloy,* 296 F.3d at 373. To effectuate a valid conveyance, both spouses must necessarily be joined in a transaction. *Cooper,* 513 S.W.2d at 202.

However, where community property is held in one spouse's name only, there is a presumption that the property is *sole-management* community property. TEX. FAM.CODE ANN. § 3.104(a) (Vernon 1998). Section 3.104 therefore trumps section 3.102.[2] Absent a showing of fraud or notice on the part of persons dealing with the named spouse, this sole-management presumption protects third parties who rely on the spouse's authority to deal with the property. TEX. FAM.CODE ANN. § 3.104(b) (Vernon 1998); *In re McCloy,* 296 F.3d at 373.[3]

3. TEX. FAM.CODE § 3.104 reads:
   (a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name, as shown by muniment, contract, deposit of funds, or

To earn the right to rely on the presumption, a third party must show three things: (1) the property conveyed was presumed to be subject to the named spouse's sole management; (2) the grantee was not party to a fraud on the unnamed spouse; and (3) the grantee had no notice of any lack of authority of the named spouse to convey the property. TEX. FAM.CODE ANN. 3.104(b) (Vernon 1998).

If the third party offers evidence supporting these three facts, the burden shifts to the unnamed spouse to rebut the third party's presumption of entitlement. If the unnamed spouse successfully rebuts the presumption, it becomes the third party's burden to prove—by clear and convincing evidence—that the grantee was *not* a party to fraud and that he or she did *not* know the named spouse lacked authority. *Id.*

That is what happened here. Velva and Terrell established their right to rely on Harry's authority to deal with the property by presenting three pieces of evidence. First, Velva presented evidence that the original warranty deed bore only Harry's signature, thus earning the right to claim the presumption that 1989 Southmore was Harry's sole-management community property. *See* TEX. FAM.CODE ANN. § 3.104(b)(1) (Vernon 1998). Next, Velva elicited appellant's and Terrell's testimony to support the conclusion that Harry and Terrell treated appellant fairly and did not attempt to defraud appellant when executing the 1990 conveyance. *See* TEX. FAM. CODE ANN. § 3.104(b)(2)(A) (Vernon 1998). Finally, Velva testified that appellant never made claims appellant owned 1989 Southmore or asserted a right to the property. *See* TEX. FAM.CODE § 3.104(b)(2)(B).

After Velva and Terrell established entitlement to the § 3.104(b) presumption, the burden then shifted to appellant to rebut the presumption. Appellant could defeat the presumption by either rebutting the § 3.104(b)(1) requirement that 1989 Southmore was sole-management property, or by rebutting the § 3.104(b)(2) requirement that Velva and Terrell were not party to fraud and lacked notice of Harry's alleged non-authority. Because appellant put on testimony—her own and Terrell's—suggesting that Velva and Terrell had knowledge of Harry's alleged "lack of authority" to convey the Southmore property, appellant accomplished the latter. This defeated the presumption.[4] *See Sudduth v. Commonwealth County Mutual Ins. Co.*, 454 S.W.2d 196, 198 (Tex.1970) (true presumption is simply a rule of law requiring the jury to reach a particular conclusion in the absence of contrary evidence; the presumption disappears when contrary evidence is introduced, but the facts upon which the presumption is based remain in

---

other evidence of ownership, or if it is in that spouse's possession and is not subject to such evidence of ownership.

(b) A third person dealing with a spouse is entitled to rely, as against the other spouse or anyone claiming from that spouse, on that spouse's authority to deal with the property if:

(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

(2) the person dealing with the spouse:

(A) is not a party to a fraud on the other spouse or another person; and

(B) does not have actual or constructive notice of the spouse's lack of authority.

4. Appellant and appellees disagree as to whether a showing of both notice and fraud is required to rebut Velva and Terrell's presumption of entitlement. It is this court's conclusion that, because appellees had the burden to demonstrate *both* "no fraud" and "no notice" to earn the presumption of entitlement, appellant needed to put on evidence of only *one* of the two required elements to rebut the presumption.

evidence and will support any inferences properly drawn therefrom).

With Velva and Terrell's § 3.104(b)(2) presumption rebutted, the burden then shifted back to appellees to prove by clear and convincing evidence that (1) Velva and Terrell did *not* know Harry lacked authority to convey 1989 Southmore, and (2) Velva and Terrell were *not* parties to fraud on appellant.

After an examination of the record, we find Velva and Terrell successfully met this burden and conclude there was legally and factually sufficient evidence to support the trial court's findings of "no notice" and "no fraud."

## DID VELVA AND TERRELL HAVE NOTICE HARRY LACKED AUTHORITY TO TRANSFER THE SOUTHMORE PROPERTY?

In her second point of error, appellant asserts her son and daughter-in-law knew Harry was married at the time he conveyed 1989 Southmore to them; therefore, appellant argues the trial court erred in failing to find—as a matter of law—that Velva and Terrell were "on notice" that Harry lacked proper authority to convey the property. *See* TEX. FAM.CODE ANN. § 3.104(b)(2)(B) (Vernon 1998). We disagree for two reasons.

**(1) Simply knowing a person is married is not the same as knowing he or she lacks authority to convey sole-management property.**

■ Appellant provides no case law or statute to support her contention that the

existence of a familial relationship between Terrell and Velva and Terrell's father was sufficient to provide Terrell and Velva with actual or constructive notice regarding Harry's ability to convey his sole management community property. She cites no authority for the proposition that merely having knowledge a person is married is, as a matter of law, the same as knowing the person lacks authority to convey property.

Texas case law indicates that simply knowing someone is married—or that he or she has been married—without more, is not enough to prove notice under § 3.104(b)(2)(B). *See, e.g., First Southern Prop., Inc. v. Gregory*, 538 S.W.2d 454, 458 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ) (finding no constructive notice of wife's rights where "mere pendency of a divorce action" is known); *Williams v. Portland State Bank*, 514 S.W.2d 124, 126 (Tex.Civ.App.-Beaumont, 1974, writ dism'd by agr.) (finding notice of grantor's lack of authority—not from bank's knowledge that grantor was married—but rather from bank's knowledge that grantor's wife had once refused to sign papers conveying her property interest.).[5]

**(2) The weight of the evidence favors the trial court's finding of "no notice."**

■ Appellant points to virtually no evidence that might have alerted Terrell and Velva to appellant's alleged claim on

---

5. *See also Turner v. Calif. Co.*, 54 F.2d 552, 553 (5th Cir.1931) (finding under Texas law that grantee's knowledge that grantor had once been married was insufficient to prove grantee was on notice grantor lacked authority); *Griggs v. Houston Oil Co.*, 213 S.W. 261, 263 (Tex.Com.App.1919) (finding no notice to grantee that grantor was married at time of conveyance where grantor gave power of at-

torney under title of "Mrs."); *Cumming v. Johnson*, 616 F.2d 1069, 1076 (9th Cir.1979) (finding no notice under Texas law of shareholder's lack of authority to convey stock where shareholder held stock in his name only and wife made no attempt to intervene in the action, even though plaintiff knew shareholder had a wife and knew she was a shareholder).

the property. Appellant admits she never got "involved" in the purchase of the property; she acknowledges her signature was not on any of the original purchase documents; and she states she was a "willing participant" to Harry's original purchase transaction. She claims the $13,000 down payment for the disputed property came from hers and Harry's community funds, but she offers no evidence or documentation to support this claim. The trial court, therefore, was free to reject her testimony and believe the conflicting testimony and evidence that Terrell and Velva paid the $13,000. *See In re D.T.C.*, 30 S.W.3d 43, 50 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (trier of fact is free to accept or reject any or all of any witness's testimony).

While evidence supporting appellant's "notice" allegation is weak, evidence supporting the trial court's "no notice" finding is strong: (1) Harry's signature was the only one on the deed; (2) Velva testified appellant never made assertions of ownership prior to her suit in intervention; (3) appellant acknowledged she knew Harry intended to give Terrell the house at the original closing and that she was a "willing participant" to this plan; (4) Terrell and Velva acted as though they owned the property by paying the monthly payments and taxes on the house; (5) appellant failed to probate Harry's estate or assert a claim against the property in the six years after Harry's death; and (6) appellant failed to assert a claim on the property in 1994, when Velva and Terrell made their balloon payment and acquired title to the property.[6]

Because appellant's challenge to the trial court's finding that Velva and Terrell did not have "actual and constructive notice" of Harry's lack of authority[7] is a factual sufficiency challenge lodged against a finding on which the appellees have the burden, we examine the entire record and set aside the finding only if the trier of fact could not reasonably have found existence

---

6. Appellant argues she failed to assert her claims to 1989 Southmore because she did not know of Harry's 1990 deed conveying ownership to Velva and Terrell until her son and daughter-in-law's divorce was pending. However, she *did* know of Harry's death in 1991 and of Velva and Terrell's balloon note pay-off in 1994; thus, she had two notable opportunities to assert claims on the house. Because tax bills went to Velva and Terrell, the assumptive warranty deed was recorded. An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument. TEX. PROP.CODE ANN. § 13.002 (Vernon 1984); *Detering Co. v. Green*, 989 S.W.2d 479, 481 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

Moreover, appellant's failure to make inquiries regarding ownership of 1989 Southmore after the death of her husband and at the time of the balloon note's pay-off negates any reliance on the discovery rule. *See Little v. Smith*, 943 S.W.2d 414, 420 (Tex.1997) (noting that Texas courts have generally refused to apply the discovery rule to claims arising out of probate proceedings); *Mooney v. Har-*

*lin*, 622 S.W.2d 83, 85 (Tex.1981) (holding claimant's assertion of discovery rule failed because she was on constructive notice that decedent's will had been filed for probate and so could have determined she was excluded from the will by examining public records); *Neill v. Yett*, 746 S.W.2d 32, 36 (Tex.App.-Austin 1988, writ denied) (holding claimant's suit to set aside grandfather's will was time-barred because examination of probate records would have revealed no bequest to claimant); *Estate of Ross*, 672 S.W.2d 315, 318 (Tex.App.-Eastland 1984, writ ref'd n.r.e.) (holding four daughters who sought to set aside order admitting father's will to probate had constructive notice because "[p]ersons interested in an estate are charged with notice of the contents of probate records.").

7. The trial court's Conclusion of Law Number 12 states "Terrell Joseph Jean and Velva Tyson Jean, to the extent that Harry Jean may have been acting without the authority of Marie Jean, did not have actual or constructive notice of the alleged lack of authority, if any." We construe this conclusion as a finding of fact.

of the fact to be established. *See Beard v. Beard,* 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied).

Based on the foregoing facts, we conclude a reasonable trier of fact could have found Velva and Terrell lacked notice of appellant's adverse claim on 1989 Southmore.[8] Accordingly, we overrule appellant's second point of error.

## DID HARRY ACT WITHIN THE SCOPE OF HIS AUTHORITY OR DID HE COMMIT FRAUD AGAINST HIS SPOUSE?

■ In her third point of error, appellant asserts the trial court erred when it found Harry was within the scope of his authority when he conveyed 1989 Southmore without his wife's joinder. We disagree.

■ Although a spouse has the right to dispose of community property under his or her control, he may not dispose of his spouse's interest in community funds if actual or constructive fraud exists. *Carnes v. Meador,* 533 S.W.2d 365, 370 (Tex.Civ.App.-Dallas 1976, writ ref'd n.r.e.). *See also Mazique v. Mazique,* 742 S.W.2d 805, 807 (Tex.App.-Houston [1st Dist.] 1987, no writ) ("In the absence of fraud on the other spouse, the managing spouse has the sole right of control and disposition of the community property as he or she sees fit."). Here, appellant makes no claim that her husband ever committed actual fraud against her.[9]

Rather, she asserts Harry committed "constructive fraud."[10]

■ Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964). It does not require an intent to defraud. *Carnes,* 533 S.W.2d at 372.

■ A presumption of constructive fraud arises when a spouse unfairly disposes of the other spouse's interest in community property. *Carnes,* 533 S.W.2d at 370; *Reaney v. Reaney,* 505 S.W.2d 338, 340 (Tex.Civ.App.-Dallas 1974, no writ). The burden is upon the disposing spouse or his donee to prove the fairness of a disposition of the other spouse's one-half community property. *Carnes,* 533 S.W.2d at 370; *Murphy v. Metropolitan Life Insur. Co.,* 498 S.W.2d 278, 282 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.).

Here, the following facts were proffered to support a finding that Harry did not breach his fiduciary duty to appellant or conduct a transaction that was unfair to the community estate: (1) Harry did not conceal the original Southmore purchase from appellant, nor did he conceal his intent to ultimately transfer the property to Terrell and Velva; (2) the community estate received $5,000 from Terrell and Velva for Harry's help in purchasing the Southmore property; (3) Harry conducted similar transactions for all of his and appellant's children and appellant was aware of this at the time Harry purchased the

---

8. This finding was reflected in the trial court's conclusions of law number 10 and 12.

9. Because appellant testified there was no "intention" on the part of Terrell or Harry to defraud her, actual fraud could not have been proved. Intent is a required element of actual fraud. *Carnes,* 533 S.W.2d at 372; *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964).

10. Although appellant did not assert "constructive fraud" in her pleadings, she did assert "Harry Jean did not, and could not, have transferred Marie Jean's interest" in the Southmore property because it was community property. Because lack of authority based on fraud negates a managing spouse's right of control and disposition of community property, we will read appellant's assertion liberally to include an allegation of constructive fraud.

Southmore property; (4) Terrell and Velva, not Harry, paid the $500 earnest money and $13,000 down payment for the house; (5) Terrell and Velva made the monthly payments on the house, as well as the bulk of the balloon note pay-off in 1994; (6) Terrell and Velva paid back all funds borrowed from appellant for the balloon note pay-off; and (7) Terrell and Velva made most of the tax payments.

Based on the foregoing, we conclude a reasonable trier of fact could have found Harry's conveyance of the 1989 Southmore property was fair and within the scope of Harry's authority.[11] As such, Terrell and Velva were entitled to rely on Harry's authority to deal with the property. *See* Tex. Fam.Code Ann. § 3.104(b) (Vernon 1998).

Accordingly, we overrule appellant's third point of error.

### CONCLUSION

Because evidence does not support a finding of fraud or notice of a lack of authority, and because appellant did not successfully rebut the sole-management presumption stated in subsection 3.104(a) of the Texas Family Code, Velva and Terrell were entitled to rely on Harry's authority to convey 1989 Southmore. *See* Tex. Fam.Code Ann. § 3.104(b) (Vernon 1998). As such, Harry's conveyance of the disputed property to Velva and Terrell was effective as a transfer of title. We therefore overrule appellant's challenge to the conveyance—her first point of error—and conclude Harry's August 1990 deed conveyed an ownership interest in 1989 Southmore to Velva and Terrell.

Finding no error, we conclude the property is an asset of Velva and Terrell's community estate and subject to the trial court's just and right division. Having

overruled all three of appellant's points of error, we affirm the judgment of the trial court.

---

11. This finding was reflected in the trial court's conclusions of law numbered 6–8.