

# NUMBER 13-06-522-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WILLIAM DAVID MICK,** **Appellant,**

**v.**

**SHIRLEY LYNN MICK,** **Appellee.**

---

## On appeal from the 343rd District Court of Bee County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Yañez**

William David Mick appeals four issues pertaining to the final decree of divorce from his marriage to appellee, Shirley Lynn Mick. William contends the district court erred (1) by failing to issue findings of fact and conclusions of law; (2 & 3) by failing to find that Shirley committed fraud on the community; and (4) by allegedly altering its original division-of-property order. We affirm.

## I. BACKGROUND

William and Shirley's divorce hearing was on March 10, 2006. At the start of the hearing, Shirley's counsel vocalized agreements the parties had made with regard to equitably dividing the couple's estate. Through these agreements, the division of certain personal property items was established, as was the division of debts. William acknowledged his acceptance of these agreements in court. The property left in dispute was a small amount of personal property (consisting of a lawnmower, family photographs, and a chair swing), a mobile home, and a tract of land.

Shirley testified that she had married William on January 22, 1980, and had separated from him in November 2000. Shirley asked the trial court for a disproportionate share of the community estate based on fault. According to Shirley, the cause of separation and William's fault stemmed from his convictions for sexual indecency and aggravated sexual assault with a minor. The victims of these crimes were William and Shirley's biological daughters. At the time of the hearing, William had served six years of a twelve year term of imprisonment.

According to Shirley's testimony, she and the children lived on the tract of land at issue, which had a number of outstanding debts against it. Because the Internal Revenue Service was poised to seize the land in October 2002, Shirley and William conveyed the land to Shirley's parents at that time. Shirley's parents paid off the debts against the land, and they permitted Shirley and the children to remain living there. As for the mobile home, Shirley testified that (1) she purchased the home in July 2000, four months prior to William being arrested for the sexual offenses; (2) her parents had fully paid for the home; (3) she was making monthly payments to her parents for the home; and (4) William contributed

2

nothing to the purchase of the home. Shirley thus asked the trial court to award her William's community interest in the mobile home. Lastly, Shirley asked the trial court to award her the lawnmower, all of the family photographs, and the chair swing. Shirley stated that both she and the children did not wish for William to possess any of the family photographs. She appraised the chair swing at $35 or $40. And she maintained that the lawnmower was a gift given to her by her parents three years earlier, which would be after the time she had separated from William.

William testified that Shirley tricked him into conveying the land to her parents. According to William, he agreed to convey the land based on the understanding that he and Shirley would work together to repurchase the property, and that Shirley's parents would fully cooperate in selling the property back to them. William asserted that he would not have conveyed the property if he had not been guaranteed that the property would eventually be returned to him through gradual, future payments. He testified that, because the land was worth three to four times the amount Shirley's parents actually paid for it, he would have instead elected to sell the property to someone else, rather than to Shirley's parents. William thus asked the trial court to invalidate the conveyance, order that the land be sold, use the proceeds to repay Shirley's parents and any debtors, and then divide the remaining proceeds between him and Shirley. William also asked the trial court to order the sale of the mobile home so that the proceeds could be divided between the parties.

The trial court rejected William's attack on the conveyance of land to Shirley's parents, finding that the deed resulted from "a distress sale" because no one but Shirley's parents would have been willing to purchase the land because of the liens against it. The trial court granted Shirley all of the family photos, the lawnmower, the chair swing, and full

3

interest in the mobile home.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under the Texas Family Code, in a suit for dissolution of marriage in which the trial court has rendered a judgment dividing the estate of the parties and upon a request by a party, the trial court shall state in writing its findings of fact and conclusions of law.[1] A request for findings and conclusions under section 6.711 must conform to the Texas Rules of Civil Procedure.[2] The trial court's duty to make such findings is mandatory, and the failure to respond when requests have been properly made is presumed harmful unless the record demonstrates that the complaining party has suffered no injury.[3] Error is harmful if it prevents an appellant from properly presenting a case on appeal.[4] The supreme court has found a trial court's failure to file findings of fact and conclusions of law to be harmless as it related to the division of property when there was ample evidence in the record to support the judgment.[5]

In the instant case, the trial court failed to file findings of fact and conclusions of law despite William's proper and timely request for findings. Although we discourage trial courts from failing to respond to timely requests for findings, we decline to abate this cause to the trial court so that findings may be entered because no harm has befallen William. The record in this case clearly establishes the reasons underlying the district court's

---

[1] T EX. FAM. CODE ANN. § 6.711(a) (Vernon 2006).

[2] *Id.* § 6.711(b).

[3] *See* TEX. R. CIV. P. 296; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996).

[4] *Tenery*, 932 S.W.2d at 30.

[5] *See id.*

decisions, and there is ample evidence to support the court's determination. The trial court was provided with a Warranty Deed bearing both William's and Shirley's signatures; the deed conveyed the land at issue to Shirley's parents. Shirley testified that William had contributed nothing to the purchase of the mobile home, and William admitted to contributing nothing once he was incarcerated in November 2000—four months after the purchase of the home. Accordingly, the reasons for the trial court's actions as to the land and mobile home were clear.

As for the personal property, William's argument that Shirley's parents intended the lawnmower to be a gift to both him and Shirley was unpersuasive given that, at the time Shirley received the lawnmower, William was incarcerated and stood to remain incarcerated for another nine years. The family photos, for which neither party alleged any monetary value, were in all likelihood awarded to Shirley because of her and the children's wishes, and the wrongs perpetuated by William onto the children. Lastly, the award of a $35 or $40 chair swing to Shirley does not create an inequitable distribution of assets, especially since William was found at fault for the divorce.

Because the record affirmatively shows that William suffered no harm from the trial court's failure to issue findings of fact and conclusions of law, we overrule his first issue.

### III. FRAUD ON THE COMMUNITY

William's second and third issues are largely indistinguishable. The linchpin of both issues is William's contention that Shirley misled him into conveying the land to her parents under false pretenses. Shirley and her father both testified that they did not mislead William; they denied representing to William that he could later repurchase the land after it was conveyed. The trial court was free to believe this testimony, and thus reject

5

William's allegations of fraud. Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court.[6]

William cites a few cases, such as *Mazique v. Mazique*, for the proposition that "constructive fraud will usually be presumed unless the managing spouse proves that the disposition of the community funds was not unfair to the other spouse."[7] William thus contends that the trial court erred by not presuming that Shirley defrauded him when the land was conveyed to her parents, and by failing to find that Shirley did not overcome this presumption at trial. *Mazique* and other cases relied on by William, however, are inapposite to the case at hand. The presumption of fraud discussed in those cases occurs when the managing spouse disposes of his or her special community property without obtaining the approval or agreement of the other spouse.[8] In the instant case, the evidence showed, through the Warranty Deed and testimony, that the land was conveyed to Shirley's parents with William's approval and agreement. William's contention that his approval and agreement stemmed from Shirley's fraud was a matter he needed to prove at trial, not Shirley. William did not achieve this objective.

Appellant's second and third issues are overruled.

### IV. ALTERED ORDER

After the divorce hearing, the trial court sent Willliam and Shirley a letter stating the following: "In regards to the personal property, I am awarding Mr. Mick the personal

---

[6] *See Garner v. Garner*, 200 S.W.3d 303, 308 (Tex. App.–Dallas 2006, no pet.).

[7] *Mazique v. Mazique*, 742 S.W.2d 805, 808 (Tex. App.–Houston [1st Dist.] 1987, no pet.).

[8] *See id.* at 807-08.

6

property as agreed upon. Mrs. Mick is awarded the lawnmower, all family photos, mobile home and debts." William interprets this letter as the trial court pronouncing that Shirley is being awarded *all* of the debts. The trial court, however, later entered a "Final Decree of Divorce," in which the debts were split evenly between William and Shirley. William argues that the letter constituted an order, and that the trial court was not at liberty to stray away from the directives of this order when it later entered the Final Decree of Divorce (i.e., the trial court could not order that the debts be split between the parties, when it had previously ordered all of the debts to go to Shirley).

William relies on the Texarkana Court of Appeals' opinion in *Shubert v. J.C. Penney Company, Inc.*[9] to support his contention that the trial court's letter constitutes an order. In *Shubert*, the court of appeals stated:

> A letter to counsel may constitute the pronouncement of judgment if it is in sufficient detail to state the court's decision on all the matters at issue and is filed with the clerk. A letter is not a rendition of judgment if it only indicates the court's intention to render judgment in a certain way and sets out guidelines by which counsel are to draw a judgment.[10]

The letter in the instant case is not in sufficient detail to state the court's decision, nor is there any indication that it was filed with the clerk. More importantly, the letter only indicates the court's intention to render judgment in a certain way, as evidenced by the letter's closing statement: "Mr. Knight [Shirley's counsel], please prepare the decree." For all these reasons, we reject William's assertion that the letter constitutes an order.

The trial court was free to split the debts between William and Shirley. In fact, both

---

[9] *Shubert v. J.C. Penney Co.*, 956 S.W.2d 634, 635 n.4 (Tex. App.–Texarkana 1997, pet. denied), *overruled on other grounds by Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999).

[10] *Id.* (citations omitted).

parties announced to the trial court at the start of the divorce hearing that they had agreed to split the debts. Appellant's final issue is overruled.

## V. Conclusion

We affirm the trial court's judgment.

_____
LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 18th day of December, 2008.