

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00097-CV

Claude L. Dailey

v.

Patricia Ann Dailey and William J. Brotherton

§ From the 324th District Court

§ of Tarrant County (324-486706-10)

§ January 10, 2013

§ Opinion by Justice Meier

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that Appellant Claude L. Dailey shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bill Meier



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00097-CV

CLAUDE L. DAILEY                           APPELLANT

V.

PATRICIA ANN DAILEY AND                   APPELLEES
WILLIAM J. BROTHERTON

----------

## FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Claude L. Dailey ("Dailey") appeals the trial court's final decree of divorce. In three issues, Dailey contends that the evidence is legally and factually insufficient to support the trial court's implied finding of fraud; that the trial court erred by awarding appellee Patricia Ann Dailey ("Wife") an equitable

---

[1]*See* Tex. R. App. P. 47.4.

lien against his separate property; and that the trial court erred by awarding spousal maintenance and a disproportionate division of community property. We will affirm.

## II. BACKGROUND

Wife sued Dailey, her husband of fifty years, for divorce on October 27, 2010. With her petition, Wife also filed a supporting affidavit wherein, among other things, she contended that Dailey had been draining community financial assets without her permission. On the same day, the trial court entered a temporary restraining order and set the order for hearing. On December 7, 2010, Dailey, through his attorney William Brotherton, filed an original answer, counter-petition for divorce, and a request that the court abate all action in this proceeding "pending physical and psychological evaluations on both parties."

Also on December 7, 2010, the parties agreed to a mutual temporary injunction. On December 20, 2010, Wife filed her first amended petition for divorce. In her petition, Wife specifically requested that she be awarded a disproportionate share of the community estate based on, among other things, fraud on the community. Nine days later, the trial court conducted a hearing on the temporary orders, but Dailey did not appear. The trial court ordered temporary spousal support of $5,070 per month. The trial court also ordered mutual temporary injunctions against both parties. Dailey later filed a motion for "De Novo Hearing on Temporary Spousal Support." The motion was initially set

3

for hearing, but the hearing was continued due to Wife's attorney having been in a car accident.

On February 14, 2011, Brotherton filed an agreed motion to withdraw as Dailey's counsel. Brotherton later filed an intervention for attorney's fees, which was eventually granted by the trial court. Shortly after Brotherton filed the motion to withdraw, Dailey filed a 207-page, pro se motion for continuance regarding his motion for a hearing on temporary spousal support. In his motion, Dailey contended that he needed a continuance because he did not have his file from Brotherton. The trial court granted the continuance, rescheduling the hearing for March 18, 2011.

Brotherton filed a brief regarding Dailey's motion for continuance. In his brief, Brotherton indicated that contrary to Dailey's contention, he had provided Dailey a complete copy of his entire file on February 21, 2011, one week after filing his motion to withdraw. Dailey filed a second motion for continuance on March 16, 2011, which was never ruled on. Two days later, the trial court heard Dailey's motion regarding temporary spousal support. Dailey appeared telephonically. At the hearing, Dailey testified that at that time he made only $1,700 monthly and that he was no longer employed. But on cross-examination, Wife introduced paystubs indicating that Dailey was still employed and making more than $4,000 bi-weekly. Dailey admitted that he had withdrawn over $600,000, which was in violation of the temporary injunction, but he said that the monies were "history." The trial court admonished Dailey for having not shown

4

up at the hearing in person. The trial court also openly expressed that it questioned Dailey's veracity regarding Brotherton having given him the case file, Dailey's alleged lack of earnings, and Dailey's reason for not having appeared at the hearing in person.

Over the next month, Dailey filed numerous documents, including objections to spousal maintenance, motions to strike evidence, motions to lift restraining orders, and motions for the trial court judge to recuse himself. Dailey appealed the denial of the judge's recusal to this court and the temporary orders, which were dismissed.

In addition to violating the temporary injunction, the record indicates that Dailey also violated discovery orders. On July 14, 2011, the trial court heard Wife's motion to compel; Dailey again did not appear. Wife filed numerous motions herself, including a motion for enforcement and for modification of temporary orders designed at securing temporary support. On July 19, 2011, the trial court signed an order to compel discovery and also granted sanctions against Dailey.

After a further motion to compel discovery and for sanctions were granted against Dailey, the trial court found on August 24, 2011, that Dailey had failed to pay spousal support as ordered. The trial court ordered a judgment against Dailey in the amount of $45,630. Afterwards, the trial court granted additional motions to compel discovery, for sanctions, and for enforcement against Dailey. On November 30, 2011, Dailey filed a motion for continuance regarding the final

trial. In his motion, Dailey contended again that he did not have his file from Brotherton. The trial court held the trial on December 8, 2011. Once again, Dailey failed to appear. The trial court noted on the record that Dailey had failed to appear at several hearings in the case. The trial court also overruled Dailey's November 30 motion for continuance.

At trial, Wife testified that she and Dailey had been married since 1960, and that they ceased living together on October 24, 2010. Wife testified that she was seeking a disproportionate award of the community estate based on fraud committed on the community, as well as fault in the breakup of the marriage and her health conditions. Wife testified that Dailey works for Lloyd's Register Energy Americas and that he made more than $100,000 annually. She also submitted in evidence records that were subpoenaed from Lloyd's Register regarding Dailey's employment and compensation. She also provided testimony regarding the couple's finances. Wife then submitted records from their various bank accounts, which indicated several withdrawals and transfers made by Dailey while the temporary restraining order was in place. Specifically, Wife introduced evidence of a summary of transactions by Dailey demonstrating that he had withdrawn $625,099.59 from community accounts during the pending of this divorce action.

The trial court granted the divorce. In its order, the trial court awarded Wife a monetary judgment against Dailey in the amount of $226,276. To secure payment regarding this award, the trial court placed an equitable lien on one of Dailey's separate properties located in Gladewater, Texas. The trial court also

6

ordered Dailey to pay $1,732 monthly spousal maintenance to Wife. Additionally, the trial court confirmed past-due amounts owed by Dailey pursuant to earlier court orders in the amount of $65,910 to Wife and $21,000 in Wife's attorney's fees. The trial court also awarded $43,680.04 to Brotherton for the attorney's fees incurred by Dailey. This appeal followed.

## III. DISCUSSION

### A. Fraud on the Community

In part of his first issue, Dailey contends that the evidence is legally and factually insufficient to support evidence of fraud on the community.[2] We disagree.

---

[2]In his brief, and prior to reaching his first stated issue, Dailey contends that his motion for new trial was improperly overruled by operation of law, that Wife "used fraudulent means to procure default," that a new trial would not work hardship to Wife, and that he "had meritorious defenses." Even though these sub-issues seem to invoke the *Craddock* factors regarding the legality of attacking a default judgment, we agree with Wife that these introductory sections to this issue are "confusing." *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). We address the issue because, even though not addressed in a motion for new trial, legal and factual sufficiency can be raised for the first time on appeal when, like here, the trial was held to the bench. *See* Tex. R. Civ. P. 324(a). Dailey also inserts a section in this portion of his brief titled, "The Court Manifested Bias Against [Dailey]." It is not clear how this allegation affects Dailey's overall contention that the trial court erred by impliedly finding fraud on the community, but we agree with Wife that whatever issue Dailey is attempting to raise is inadequately briefed. *See Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co.*, 106 S.W.3d 169, 173 (Tex. App.—Amarillo 2003, no pet.) ("Failure to brief, or to adequately brief, an issue by an appellant effects a waiver of that issue on appeal.").

### 1. Standard of Review

When a party attacks the factual sufficiency of an adverse finding, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must consider all the evidence and determine whether the adverse finding is so weak and against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

A "no evidence" or legal insufficiency point is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether the evidence is legally sufficient to support a factfinder's determination, we must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *Id.* We consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

### 2. Law Pertaining to Fraud on the Community

A fiduciary duty exists between a husband and a wife regarding the community property controlled by each spouse. *Zieba v. Martin*, 928 S.W.2d

8

782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ). Although a spouse has the right to dispose of community property under his control, he may not dispose of his spouse's interest in community funds if actual or constructive fraud exists. *Mazique v. Mazique*, 742 S.W.2d 805, 807–08 (Tex. App.—Houston [1st Dist.] 1987, no writ). "Fraud on the community" is a judicially created concept based on the theory of constructive fraud and is applied when there is a breach of a legal or equitable duty which violates the fiduciary relationship existing between spouses. *Zieba*, 928 S.W.2d at 789. Although not actually fraudulent, any such conduct in the marital relationship is termed fraud on the community because it has all the consequences and legal effects of actual fraud. *Id.*

Constructive fraud does not require an intent to defraud but is instead the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Id.*; *see Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A presumption of constructive fraud arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent. *Tyson-Jean*, 118 S.W.3d at 9; *Mazique*, 742 S.W.2d at 808. The disposing spouse then bears the burden of proof to show fairness in disposing of community assets. *Zieba*, 928 S.W.2d at 789; *see Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex. App.—Dallas 1986, writ dism'd); *Horlock v. Horlock*, 533 S.W.2d 52, 55 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ dism'd w.o.j.).

9

In this case, a presumption that Dailey committed constructive fraud arose when Dailey himself testified that he had taken over $600,000 from community funds and when Wife testified that she did not know he was doing so and that he did not have her consent. The record reveals that some of the withdrawals he took from community funds transpired while he was under court order not to do so. Rather than carry his burden to show fairness in disposing of these community assets, Dailey contended that the monies were used for investments, but when pushed on this issue, Dailey responded crassly that they were "history."

In addition to his admission, Wife introduced records of withdrawals by Dailey from community accounts totaling more than $625,000.[3] Because Dailey never rebutted this presumption, he failed to overcome the presumption that his disposing of the couple's assets was constructive fraud.

After considering all of the evidence, and deferring to the factfinder for issues of credibility, we conclude that a reasonable factfinder could have found that Dailey committed constructive fraud on the community by withdrawing these monies and that he failed to rebut the presumption that he committed constructive fraud. *See Loaiza v. Loaiza*, 130 S.W.3d 894, 902 (Tex. App.—Fort Worth 2004, no pet.) ("By failing to show the fairness of the expenditures,

_____

[3]In his brief, Dailey complains of the admission of these records at trial. But Dailey did not object to the admission of these records at trial and thus waived his complaint on appeal. *See* Tex. R. App. P. 33.1; *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam).

[husband] failed to rebut the presumption of constructive fraud that arises when one spouse disposes of the other spouse's one-half interest in community property without [her] knowledge or consent."). As such, we hold that the trial court's determination was not so weak and against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Accordingly, we overrule this portion of Dailey's first issue on appeal.

### 3. Division of Property

In part of his first and third issues, Dailey argues that the trial court erred by awarding Wife a disproportionate division of community property. Wife, among many arguments, counters that even assuming that the division was disproportionate, the trial court was within its discretion to award her an offset based on the trial court's implied finding that Dailey committed fraud upon the community. We agree with Wife.

A trial judge is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (West 2006); *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). The court has broad discretion in making a just and right division, and absent a clear abuse of discretion, we will not disturb that division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its

11

discretion in dividing marital property. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). The trial court is not required to divide community property equally, and we must presume that the trial court properly exercised its discretion in dividing the marital estate. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981).

Like in this case, in a non-jury trial when no findings of fact or conclusions of law are filed or requested, we must presume that the trial court made all the necessary findings to support its judgment. *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996); *Byrnes v. Byrnes*, 19 S.W.3d 556, 561 (Tex. App.—Fort Worth 2000, no pet.). Consequently, if the trial court's implied findings are supported by the evidence, we must uphold its judgment on any theory of law applicable to the case. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Among a myriad of factors the trial court may consider when making a just and right division, two are (1) a spouse's dissipation of the community estate and (2) any misuse of community property. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) (stating that wasting of community assets may be considered).

Under the facts in this case, Wife may recover not only her share of the property that existed in the community at the time of the divorce, but also that which was improperly depleted from the community estate. *See Schlueter*, 975 S.W.2d at 589. Dailey admitted that he divested the community of over

12

$600,000, and he stated that those monies were "history." The evidence at trial supports the trial court's implied finding of fraud and provides a legal basis for the alleged disproportionate award to Wife of the community estate. We overrule these portions of Dailey's first and third issues.

### 4. Equitable Lien on Dailey's Separate Property

In his second issue, Dailey argues that the trial court erred by awarding an equitable lien against his separate property located in Gladewater, Texas. Specifically, Dailey argues, "Trial courts may not impose liens on a spouse's separate property for the general purpose of securing a just and right division of marital property." Although we agree that this is the general rule of law, we disagree that the trial court did just that in this case.

When dividing marital property upon divorce, and absent a reimbursement interest to the community, trial courts may not impose liens on a spouse's separate property for the general purpose of securing a just and right division of marital property. *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992). But trial courts may impose equitable liens on one spouse's separate property as a means for securing the discharge of payments owed by one spouse to the other. *Id.*; *see also Mullins v. Mullins*, 785 S.W.2d 5, 11–12 (Tex. App.—Fort Worth 1990, no writ) (reviewing case law on authority of trial court's power to impose equitable liens on separate property and holding that trial court did not err by securing wife's money judgments against husband with a note and "Deed of Trust Lien on every item of [husband's] separate property."); *Day v. Day*, 610

13

S.W.2d 195, 198 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.) (reviewing the development of the practice by trial court's imposing equitable liens on separate property to ensure compliance with court-ordered division of property).[4]

In this case, the trial court awarded Wife a money judgment of $226,276. Further, in its order, the trial court found that an equitable lien on Dailey's Gladewater property was necessary to ensure payment of this award from Dailey to Wife. We conclude that the trial court did not err by placing an equitable lien on Dailey's separate property in order to ensure Dailey's payment to Wife of the monetary award. *See Bell v. Bell*, 540 S.W.2d 432, 441 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ) (holding that trial court was within its discretion by placing a lien on husband's separate property to secure payment of $20,000 in cash to wife in divorce action); *see also Mozisek v. Mozisek*, 365 S.W.2d 669, 670 (Tex. Civ. App.—Fort Worth 1963, writ dism'd) ("The court had authority to fix an equitable lien on appellant's separate property to secure the payment of the money judgment to appellee."). The trial court's decision to do so is further buttressed by evidence in the record that Dailey had already refused to follow court-ordered maintenance and payments during the course of this case. We overrule this portion of Dailey's second issue.

---

[4]In *Mullins*, this court rejected our sister court's position that such liens are permissible only against the separate property to which an improvement was made at community expense. *See Smith v. Smith*, 715 S.W.2d 154, 161 (Tex. App.—Texarkana 1986, no writ).

## B. Spousal Maintenance

In the remainder of his third issue, Dailey argues that the trial court abused its discretion by awarding spousal maintenance to Wife. Specifically, Dailey argues that "Wife cannot show evidence of need or lack of resources" to support the trial court's judgment. We conclude that the appellate record is incomplete and that Dailey cannot overcome the presumption that the unrecorded portions of the record support the trial court's judgment.

The Texas supreme court has consistently held that when an appellant complains of the factual or legal sufficiency of the evidence, the appellant's burden to show that the judgment is erroneous cannot be discharged in the absence of a complete or an agreed statement of facts. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991); *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968). In this case, Dailey admits in his brief that the evidentiary hearing regarding the temporary spousal maintenance was not recorded, and thus, the record is incomplete.[5] *See Long v. Long*, 144 S.W.3d 64, 69 (Tex. App.—El Paso 2004, no pet.) (holding that in a family law case involving unrecorded

---

[5]The scenario of an "incomplete" record is different than a "partial" record under Texas Rules of Appellate Procedure 34.6(c)(1). *See* Tex. R. App. P. 34.6(c)(1) ("If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues."). When complying with rule 34.6(c)(1), a portion of the existing record is designated by the parties and "constitutes the entire record for purposes of reviewing" the raised "stated points or issues." *See* Tex. R. App. P. 34.6(c)(4). In this case, there is no existing record of the hearing regarding spousal maintenance.

15

in camera interviews with minors, reviewing court must presume facts existed to support trial court's final judgment). We overrule this remaining portion of Dailey's third issue.

## IV. Conclusion

Having overruled all of Dailey's issues on appeal, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DELIVERED:  January 10, 2013